# IN THE UNITED DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **JIMMY D. SAYLOR &** | ) **Chapter 13** |
| **TAMMY M. SAYLOR** | ) **Case No. 02-80576** |
| | ) |
| Debtors. | ) |
| _____ | ) |
| | ) |
| **JIMMY D. SAYLOR,** | ) |
| Plaintiff/Appellant, | ) |
| | ) |
| **vs.** | ) **Case No.: 07-CV-00229-WKW** |
| | ) |
| **SELECT PORTFOLIO SERVICING, INC.,** | ) |
| Defendant/Appellee. | ) |

---

## ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF ALABAMA

---

## BRIEF OF APPELLEE SELECT PORTFOLIO SERVICING, INC.

---

Thomas W. Thagard
John David Collins
Brian R. Walding
MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203
(205) 254-1000

Counsel for Select Portfolio Servicing, Inc.

*Saylor  v. Select Portfolio Servicing, Inc.*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Counsel for Defendant/Appellee Select Portfolio Servicing, Inc. represents that the following persons and parties have an interest in the outcome of this case.  This representation is made so that this Court may evaluate possible disqualification or recusal.

1.    Michael Bybee, Attorney for Defendant/Appellee

2.    John David Collins, Attorney for Defendant/Appellee

3.    Select Portfolio Servicing, Inc., Defendant/Appellee

4.    Maynard, Cooper & Gale, P.C., Attorneys for Defendant/Appellee

5.    David Poston, Attorney for Plaintiff/Appellant

6.    Thomas W. Thagard III, Attorney for Defendant/Appellee

7.    Brian R. Walding, Attorney for Defendant/Appellee

8.    Honorable William Sawyer, United States Bankruptcy Court Judge for the Middle District of Alabama.

*Saylor v. Select Portfolio Servicing, Inc.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Counsel for Defendant/Appellee certifies that Select Portfolio Servicing, Inc., is a wholly-owned subsidiary of SPS Holding Corp.  Credit Suisse First Boston (USA), Inc. is the sole shareholder of SPS Holding Corporation.

*Saylor v. Select Portfolio Servicing, Inc.*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The issues presented in this appeal are neither novel nor complicated. The Bankruptcy Court's decision applied well settled law to undisputed facts.  The parties' briefs on appeal set forth their respective positions.  Accordingly, Appellee does not believe that oral argument is necessary.

*Saylor v. Select Portfolio Servicing, Inc.*

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................................C-1

CORPORATE DISCLOSURE STATEMENT .......................................................................... i

STATEMENT REGARDING ORAL ARGUMENT .................................................................. ii

TABLE OF CONTENTS ......................................................................................................... iii

TABLE OF CITATIONS ........................................................................................................ iv

STANDARD OF REVIEW ......................................................................................................1

STATEMENT OF FACTS .......................................................................................................1

SUMMARY OF THE ARGUMENT .......................................................................................4

ARGUMENT AND CITATION OF AUTHORITIES ...............................................................5

    A.    As A Preliminary Matter, The Bankruptcy Court Did Not Have Subject Matter Jurisdiction Over The Debtor's Complaint, Because His Claims Did Not Involve Property Of The Debtor's Estate.........................................................................5

    B.    The Debtor's Complaint Fails To State A Claim For Violation Of The Automatic Stay Imposed Under § 362 of the Bankruptcy Code.. ...............................................6

    C.    The Allegations Contained In The Debtor's Complaint Do Not Present A Cause of Action Pursuant to 11 U.S.C. § 105(a) of the Bankruptcy Code........................9

        1.    The Bankruptcy Court's decision not to invoke § 105 of the Bankruptcy Code was not an abuse of discretion.........................................................10

        2.    There is no remedy available to the Debtor under §§ 105 and 501 of the Bankruptcy Code ...................................................................................12

        3.    Pursuant to binding Eleventh Circuit law, the Debtor has not alleged claim under §§ 105 and 506 of the Bankruptcy Code .........................................13

CONCLUSION.....................................................................................................................14

CERTIFICATE OF SERVICE ...............................................................................................15

ADDENDUM ..................................................................................................................... A-i

*Saylor v. Select Portfolio Servicing, Inc.*

# TABLE OF CITATIONS

## CASES

Finova Capital Corp., v. Larson Pharmacy Inc.
 (In re Optical Technologies, Inc.), 425 F.3d 1294 (11th Cir. 2005).........................1, 10, 11

Guerra v. Fernandez-Rocha (In re Fernandez-Rocha), 451 F.3d 813 (11th Cir 2006)....................1

Hardy v. United States (In re Hardy), 97 F.3d 1384 (11th Cir. 1996)..............................................9

Jove Eng'g, Inc. v. IRS,  92 F.3d 1539 (11th Cir. 1996)..................................................................9

Leeper v. Pennsylvania Higher Education Assistance Agency, 49 F.3d 98 (3rd Cir. 1995)............7

Mann v. Chase Manhattan Mortgage Corp., 316 F.3d 1 (1st Cir. 2003) .......................................7, 8

Norwest Bank Worthington v. Ahlers, 485 U.S. 197 (1988).........................................................9, 10

Ranch House of Orange-Brevard, Inc. v. Gluckstern (In re Ranch House of Orange-Brevard,
 Inc.), 773 F.2d 1166 (11th Cir. 1985) ...............................................................................11

Sims v. Capital One Financial Corp. (In re Sims), 278 B.R. 457 (Bankr. E.D. Tenn. 2002)..........7

Smith v. Fairbanks Capital Corp. (In re Smith), 299 B.R. 687 (Bankr. S.D. Ga. 2003) ............7, 9

Soares v. Brockton Credit Union (In re Soares) 107 F.3d 969 (1st Cir. 1997)..............................7

Tate v. NationsBanc Mortgage Corp. (In re Tate), 253 B.R. 653 (Bankr. W.D.N.C. 2000).........10

Telfair v. First Union Mortgage Corp., 216 F.3d 1333 (11th Cir. 2000)................................5, 6, 13

Thomas v. Crosby, 371 F.3d 782 (11th Cir. 2004) ........................................................................5

## STATUTES

11 U.S.C. § 105 .......................................................................................................................9, 10, 12

11 U.S.C. § 105(a) ...........................................................................................................................9

11 U.S.C. § 362 ....................................................................................................................3, 4, 6, 13

11 U.S.C. § 362(a)(3).......................................................................................................................6

11 U.S.C. § 501..............................................................................................................3, 4, 10, 11, 13

11 U.S.C. § 502(a) ...........................................................................................................................12

*Saylor v. Select Portfolio Servicing, Inc.*

11 U.S.C. § 506.................................................................................................3, 4, 10, 13

11 U.S.C. § 506(b)........................................................................................................13

12 U.S.C. § 2601.............................................................................................................2

12 U.S.C. § 2605.............................................................................................................4

FED. R. BANKR. P. 7001................................................................................................12

FED. R. BANKR. P. 3007................................................................................................12

FED. R. BANKR. P. 8010.............................................................................................1, 2

*Saylor v. Select Portfolio Servicing, Inc.*

## STANDARD OF REVIEW[1]

Defendant/Appellee Select Portfolio Servicing, Inc. ("SPS") adopts and incorporates the standard of review as stated in the Appellant Brief in that the District Court reviews "de novo" a dismissal for failure to state a claim. *Guerra v. Fernandez-Rocha (In re Fernandez-Rocha),* 451 F.3d 813, 815 (11th Cir 2006). However, when reviewing a bankruptcy court's interpretation of the terms of its own orders, the bankruptcy court's ruling is to be given deference by the district court and should be disturbed only for an abuse of discretion. *Finova Capital Corp., v. Larson Pharmacy Inc.* (*In re Optical Technologies, Inc.*), 425 F.3d 1294, 1300 (11th Cir. 2005).

## STATEMENT OF FACTS

On April 29, 2002 (the "Petition Date"), Jimmy D. Saylor (the "Debtor") filed his petition for relief under Chapter 13 of 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") identified as case number 02-80576 (the "Bankruptcy") in the United States Bankruptcy Court for the Middle District of Alabama (the "Bankruptcy Court"). (Debtor's Record, Item 1.) Select Portfolio Servicing, Inc. ("SPS"), in its capacity as servicer of Debtor's mortgage loan, filed a proof of claim in the Bankruptcy in the amount of $3,225.22, representing the total pre-petition arrearage owing by the Debtor. (Debtor's Record, Item 6.) On July 3, 2002, the Debtor filed an amended Chapter 13 plan (as amended, the "Plan") designed to cure the pre-petition mortgage arrears evidenced by SPS's proof of claim. (Debtor's Record, Item 2.) On September 18, 2002, the Bankruptcy Court confirmed the Debtor's Plan. (Debtor's Record, Item 3.)

During the pendency of the Debtor's Bankruptcy, between May 2004 and September 2004, the Debtor defaulted on his post-petition mortgage obligation to SPS (the "Post-Petition

---

[1] Pursuant to Rule 8010(a)(2) of the Federal Rules of Bankruptcy Procedure, as appellee, Select Portfolio Servicing, Inc. is in agreement with the appellant's statement of the basis of appellate jurisdiction and statement of the issues.

*Saylor v. Select Portfolio Servicing, Inc.*

Arrearage"). As a result of the Debtor's default, on September 10, 2004, SPS filed a Motion for Relief from Stay. (the "Motion for Relief from Stay"; Debtor's Record, Item 4.) The Debtor and SPS resolved the Motion for Relief from Stay by way of an agreement to include the Post-Petition Arrearage in the Debtor's Plan. (Debtor's Record, Item 17, ¶14.) On October 14, 2004, the Bankruptcy Court entered its order (the "October 14, 2004 Order") ratifying the agreement between the Debtor and SPS, thereby allowing the Debtor to amend his Plan to include the Post-Petition Arrearage in the aggregate amount of $2,818.44, plus attorney's fees and costs in the amount of $600.00. (Debtor's Record, Item 5.) In conformity with the October 14, 2004 Order, on November 1, 2004, SPS filed a proof of claim for the Post-Petition Arrearage plus certain fees and costs. (Debtor's Record, Item 7).

On May 18, 2006, two years after entry of the October 14, 2004 Order, the Debtor submitted a "qualified written request" (a "QWR") to SPS pursuant to the Real Estate Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.* (Debtor's Record, Item 17, ¶16.) On May 24, 2006, in response to the Debtor's QWR and in compliance with RESPA's statutory requirements, SPS forwarded Debtor's counsel a transaction history report and loan payoff statement indicating that inspection fees, broker price opinions, legal fees and costs had been assessed to Debtor's mortgage loan. (Debtor's Record, Item 17, ¶17; Debtor's Record, Item 12, Exhibit A & Exhibit B). It is undisputed that SPS did not attempt to collect any of these fees/charges from the Debtor. (*See id.*) It is further undisputed that Debtor neither contacted SPS to address the fees/charges nor made any effort to remit those fees/charges to SPS. (*See id.*)

On July 10, 2006, approximately two months after receiving SPS's response to his QWR, the Debtor commenced the instant adversary proceeding against SPS (the "AP") in the

---

*See* FED. R. BANKR. P. 8010. Therefore, these statements will not be repeated herein.

*Saylor v. Select Portfolio Servicing, Inc.*

Bankruptcy Court.  (Debtor's Record, Item 8.)  The Debtor's original four-count Complaint alleged that SPS violated the FDCPA and §§ 362 and 506 of the Bankruptcy Code by merely noting certain fees/charges in its internal documents.  (Debtor's Record, Item 8.)   SPS filed a Motion to Dismiss the AP on August 10, 2006 for failure to state a claim upon which relief can be granted (the "Motion to Dismiss").  (Debtor's Record, Item 9.)

On November 13, 2006, prior to the Bankruptcy Court issuing an order on SPS's Motion to Dismiss, the Debtor filed his First Amended Complaint (as amended, the "Complaint"). (Debtor's Record, Item 16.)  The Debtor's amended Complaint abandoned his FDCPA claim in favor of claim for violation of § 501 of the Bankruptcy Code.[2]  (Debtor's Record, Item 16.)  On January 12, 2007, the Bankruptcy Court issued an Order and Memorandum Decision granting SPS's Motion to Dismiss with prejudice.   (Debtor's Record, Item 17 & 18.)   The Debtor promptly filed a Motion to Alter or Amend Judgment, which the Bankruptcy Court denied by Order dated February 15, 2007.  (Debtor's Record, Items 19-20.)  The Debtor filed his Notice of Appeal to this Court on February 22, 2007 and submitted his Appellant Brief on March 30, 2007. (Docket Entry # 5.)

---

[2] In the Debtor's Brief in Response to Defendant's Motion to Dismiss (Debtor's Record, Item 12), the Debtor represented to the Court that he would amend his original Complaint to remove the allegations pertaining to violations of 11 U.S.C. § 506. (Debtor's Record, Item 12, Pg. 2). Despite this representation, the Debtor failed to remove these allegations in his amended Complaint and continues to seek damages under 11 U.S.C. § 506. (Debtor's Record, Item 16, Count III).

*Saylor v. Select Portfolio Servicing, Inc.*

## **SUMMARY OF THE ARGUMENT**

The crux of the Debtor's argument is that, by listing fees and charges in its internal transaction history report, SPS violated the automatic stay imposed by § 362 of the Bankruptcy Code, the Bankruptcy Court's October 14, 2004 Order and §§ 501 and 506 of the Bankruptcy Code.  As noted above, the Debtor discovered these fees and charges by submitting a QWR to SPS pursuant to RESPA, which requires mortgage loan servicers, such as SPS, to respond to a customer's QWR within sixty (60) days.  *See* 12 U.S.C. § 2605.  After receiving SPS's RESPA response, Debtor promptly commenced this adversary proceeding alleging that the fees and charges reflected in SPS's internal documents, which SPS undisputedly made no effort to collect, somehow violated the automatic stay, the Bankruptcy Court's October 14, 2004 Order and §§ 501 and 506 of the Bankruptcy Code.

SPS's response to the Debtor's QWR was not an attempt by SPS to affect property of the Debtor's Chapter 13 Bankruptcy estate, and as a result, neither this Court nor the Bankruptcy Court enjoys subject matter jurisdiction over the Debtor's claim.  However, even if the acts alleged in the Debtor's Complaint could somehow be construed to affect property of the Debtor's Bankruptcy estate, SPS's RESPA response can not rise to the level of an act in violation of the automatic stay.  Moreover, any claim by the Debtor that SPS violated the Bankruptcy Court's October 14, 2004 Order fails as the Bankruptcy Court's own interpretation of that Order confirms that it was never intended to constitute a complete prohibition against SPS to list post-Petition Date fees to the Debtor's account.  Finally, Debtor's claim for violations of §§ 501 and 506 of the Bankruptcy Code are likewise misplaced, as SPS never filed a proof of claim for the fees listed on its response to the Debtor's QWR in the Debtor's Bankruptcy and by instituting the AP, the Debtor moved this dispute outside the claim resolution process provided for within the

*Saylor v. Select Portfolio Servicing, Inc.*

Debtor's Bankruptcy case, as provided for in the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. Accordingly, the Debtor's attempts to "gin up" a cause of action by virtue of the QWR to SPS fails and the Bankruptcy Court's Order of Dismissal should be affirmed in all respects.

## ARGUMENT AND CITATION OF AUTHORITIES

A.    **As A Preliminary Matter, The Bankruptcy Court Did Not Have Subject Matter Jurisdiction Over The Debtor's Complaint, Because His Claims Did Not Involve Property Of The Debtor's Estate.**

As discussed in further detail below, the Bankruptcy Court correctly concluded that the Debtor's AP fails to state a claim upon which relief may be granted under the Bankruptcy Code provisions invoked by the Debtor. However, even if the counts in the Debtor's Complaint met legal muster on their own, which they do not, the alleged violation would not be against property of the Debtor's Chapter 13 estate and as a result, the Bankruptcy Court lacks subject matter jurisdiction over the Debtor's claims.[3] In *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1340 (11th Cir. 2000), the Eleventh Circuit adopted the "estate transformation" approach in determining what constitutes property of a chapter 13 debtor's estate.[4] Under this approach, "only that property necessary for the execution of the plan [remains] property of the estate after confirmation." *Telfair*, 216 F.3d at 1340. As such, "after confirmation, only the amount required for the plan payments remained property of the estate. [The Chapter 13 debtor's] regular loan payments, made outside of the plan, were therefore no longer property of the estate

---

[3] Regardless of whether a party raises jurisdiction, an appellate court is "clearly obligated to raise questions concerning our subject-matter jurisdiction sua sponte in all cases." *Thomas v. Crosby*, 371 F.3d 782, 801 (11th Cir. 2004).

[4] It is important to note that unlike the instant case, in *Telfair*, the creditor had charged the debtor with the fees in question subsequent to the Chapter 13 plan payments and discharge, notifying the *Telfair* debtors of the intent to foreclose. The Debtor in the instant case has not alleged any such demand for payment by SPS, much less any threat of foreclosure. The only facts alleged supporting the claims alleged by the Debtor is SPS's response to the Debtor's QWR.

*Saylor v. Select Portfolio Servicing, Inc.*

and [the creditor/mortgagee's] application of a portion of these payments to attorney's fees pursuant to the Deed did not violation section 362(a)." *Id.* The same holds true in the instant case.

Assuming for the sake of argument that the information provided in connection with SPS's RESPA response constitutes an "act" in violation of the automatic stay or the October 14, 2004 Order, the purported violation could not and would not affect property of the Debtor's Chapter 13 estate. This is because SPS was not attempting to control or possess property necessary to effectuate Debtor's Plan payments or otherwise asserting that the fees/charges at issue should have been included in the Debtor's Plan. As stated by the Bankruptcy Court, the Debtor's "home ceased to be property of the estate on September 18, 2002, when the Debtor's plan was confirmed." Memorandum Decision, p. 5. Since the Debtor has not alleged that SPS was trying to effect property of the Debtor's estate, the Bankruptcy Court lacks subject matter jurisdiction to entertain a claim for violation of the automatic stay.[5] As such, in addition to failing to state a claim upon which relief may be granted, as explained in *Telfair*, neither the Bankruptcy Court nor this Court has subject matter jurisdiction over Debtor's claims.

**B.    The Debtor's Complaint Fails To State A Claim For Violation Of The Automatic Stay Imposed Under § 362 of the Bankruptcy Code.**

"[A]ny act to obtain possession of property of the estate or of property from the estate or exercise control over property of the estate" constitutes a violation of the automatic stay. 11 U.S.C. § 362(a)(3). Therefore, in order for SPS to have violated the automatic stay, it must have taken some "act" to obtain possession or exercise control over property of the Debtor's estate. As alleged in the Debtor's Complaint, SPS's (internal) transaction history report reflected the

---

[5] The Bankruptcy Court questioned jurisdiction over this matter after determining there was no basis in the Bankruptcy Code for the Debtor's Complaint. *See* Memorandum Decision, p. 5.

*Saylor v. Select Portfolio Servicing, Inc.*

assessment of certain fees and expenses to the Debtor's mortgage account.  However, as the Bankruptcy Court correctly noted, "**the imposition of a charge on an existing mortgage account, in and of itself, is not an act to obtain possession of property**."  Memorandum Decision, p. 3. (emphasis added).  In other words, the mere notation of a charge does not rise to the level of the violation of the automatic stay.  *Smith v. Fairbanks Capital Corp. (In re Smith)*, 299 B.R. 687, 692 (Bankr. S.D. Ga. 2003)("A creditor's notation of accruing attorney fees does not by itself violate the automatic stay."); *see also, e.g. Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1 (1st Cir. 2003), *Leeper v. Pennsylvania Higher Education Assistance Agency,* 49 F.3d 98, 104 (3rd Cir. 1995)(holding that the accrual of post-petition interest to a debtor's account does not violate the automatic stay); *Sims v. Capital One Financial Corp. (In re Sims)*, 278 B.R. 457, 471 (Bankr. E.D. Tenn. 2002)("internal bookkeeping entries by a creditor" cannot violate the automatic stay).

The First Circuit's decision in *Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1 (1st Cir. 2003) is particularly instructive in light of the present facts.  In *Mann*, a Chapter 13 debtor/mortgagor claimed that his creditor/mortgagee violated the automatic bankruptcy stay by listing post-petition attorney fees and charges on its internal accounting documents.  In analyzing the debtor's claim, the First Circuit looked to the purpose of the automatic stay to deter creditors from "(i) seeking to convert an unsecured prepetition claim into a secured claim; (ii) obtaining actual possession of property of the chapter 13 estate; or (iii) attempting to perfect a judicial, statutory or other lien in such property."  *Mann*, 316 F.3d at 3 (*citing Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969 (1st Cir. 1997)).  In light of these purposes, the *Mann* court found that "postpetition bookkeeping entries by [the creditor/mortgagee] did not implicate Bankruptcy Code § 362(a)(3), since such unilateral accruals of amounts assertedly due, but in no

7

*Saylor v. Select Portfolio Servicing, Inc.*

manner communicated to the debtor, the debtor's other creditors, the bankruptcy court, nor any third party, plainly are not the sort of 'act' Congress sought to prescribe." *Id.* The *Mann* court further explained that "absent any overt attempt by [the creditor/mortgagee] to recover these fees from the chapter 13 estate in the future . . . the [creditor/mortgagee's] bookkeeping entries represent mere unilateral notations regarding attorneys fees which it assertedly incurred, thereby according it no identifiable legal advantage over other creditors." *Id.* at 4. The very same result is required here.

SPS's response to the Debtor's QWR does not rise to the level of an "act" in violation of the stay, since it was merely a reporting of its internal accounting of the Debtor's mortgage, not an attempt to collect a debt. Indeed, as explained by the Bankruptcy Court in its well-reasoned Memorandum Decision, "**a foreclosure of a mortgage while the automatic stay is in effect would constitute a violation of the automatic stay, [but] it does not follow that the imposition of a charge in and of itself would violate the automatic stay**." Memorandum Decision, p. 3. (emphasis added) Moreover, the Debtor has not - because he cannot - alleged that SPS undertook any effort whatsoever to collect the fees and charges reflected in the QWR response. Indeed, if as the Debtor appears to suggest, responding to a QWR under RESPA rises to the level of an automatic stay violation, a creditor/mortgagee would always be faced with the dilemma of either choosing to defend a potential RESPA claim or a claim for violation of automatic stay. Such a result is untenable. Clearly, SPS generated and sent documentation itemizing fees and charges accessed to Debtor's account in an effort to comply with RESPA, not to collect a debt in violation of the automatic stay.

Finally, because the *Mann* case is so plainly dispositive of the Debtor's stay violation claim, he suggests that *Mann* is distinguishable because the debtor in that case was allowed to

*Saylor v. Select Portfolio Servicing, Inc.*

conduct discovery.  This argument, however, overlooks the fact that the Debtor essentially

conducted the same level of fact-finding allowed in *Mann* by virtue of the his QWR.  To allow

the Debtor to troll the waters any further in an effort to conjure up a stay violation would only

serve to penalize SPS for fulfilling its duties under RESPA.  In a similar case involving a Motion

to Dismiss in the Southern District of Georgia, the court found that "until the mortgagee

demands from Debtor more than it is entitled to under its allowed proof of claim, it cannot be

said to have taken any overt act to collect those fees."  *In re Smith,* 299 B.R. at 693.  The same is

true in the instant case.  Indeed, there is no allegation that SPS sent any demand letters, made any

threatening phone calls or engaged in any other activity that could be characterized as an effort to

collect the fees and charges reflected in its internal transaction history report.  SPS merely

responded to Debtor's QWR, as statutorily required by RESPA.

Simply put, the Bankruptcy Court's conclusion that the Debtor could not pursue a stay

violation claim is absolutely correct, entirely consistent with weight of case law authority, and

should not be disturbed by this Court.

C.    **The Allegations Contained In The Debtor's Complaint Do Not Present A
Cause of Action Pursuant to § 105(a) of the Bankruptcy Code.**

Section 105 of the Bankruptcy Code allows a bankruptcy court to issue "any type of

order, whether injunctive, compensative or punitive, as long as it is necessary or appropriate  to

carry out the provisions of the Bankruptcy Code." *Hardy v. United States (In re Hardy)*, 97, F.3d

1384, 1389 (11th Cir. 1996)(*citing Jove Eng'g v. IRS*, 92 F.3d 1539, 1554 (11th Cir. 1996)).

However, this power is not unbridled.  "[W]hatever equitable powers remain in the bankruptcy

courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest

Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988).

> Despite the breadth of language in § 105, *see In re Hardy*, the
> Court's authority is not without limitation.   The statutory language

*Saylor v. Select Portfolio Servicing, Inc.*

> itself uses the term "provisions" and not the term "purposes" in describing the courts' power to effect the Code. This choice of terminology suggests that an exercise of § 105 must be linked to a specific Code section, and not merely to a general objective of the bankruptcy process.
>
> …
>
> The Supreme Court has likewise held that "[u]nder this section, a court may exercise its equitable power only as a means to fulfill some specific Code provision." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988).

*Tate v. NationsBanc Mortgage Corp. (In re Tate)*, 253 B.R. 653, 667 (Bankr. W.D.N.C. 2000). Therefore, § 105 does not independently provide the Debtor with a cause of action. As such, any claims alleged by the Debtor in the Complaint based solely upon § 105 must fail. (*See* Complaint, Count IV.) Setting aside the Debtor's bare invocation of § 105 in Count IV of the Complaint, in Counts II and III, the Debtor invoked § 105 in conjunction with the October 14, 2004 Order and §§ 501 and 506 of the Bankruptcy Code. As discussed below, all of these remaining counts fail to state a claim upon which relief can be granted.

1. The Bankruptcy Court's decision not to invoke § 105 of the Bankruptcy Code was not an abuse of discretion.

The Debtor asserts that since the Bankruptcy Court has the right to punish violations of court orders or Bankruptcy Code directives, the Bankruptcy Court should have held SPS in contempt for charging fees in excess of the amounts allowed pursuant to the Bankruptcy Court's October 14, 2004 Order. This argument, however, is fatally flawed because the Debtor fails to recognize that the Bankruptcy Court, in its Memorandum Decision, was <u>interpreting its own order</u>.

In considering the Bankruptcy Court's interpretation and application of its own orders, the Eleventh Circuit applies a more stringent standard of review than *de novo*. *See Finova Capital Corp., v. Larson Pharmacy Inc.* (*In re Optical Technologies, Inc.*), 425 F.3d 1294 (11th

*Saylor v. Select Portfolio Servicing, Inc.*

Cir. 2005). Indeed, the Eleventh Court has recognized that "[w]hile we have not definitively articulated the standard, we have said 'we are reluctant to disturb a bankruptcy court's judgment interpreting its own earlier order,' and that the 'bankruptcy judge who has presided over a case from its inception is in the best position to clarify any apparent inconsistencies in the court's rulings.'" *Finova*, 425 F.3d at 1300. (*quoting Ranch House of Orange-Brevard, Inc. v. Gluckstern (In re Ranch House of Orange-Brevard, In*c.), 773 F.2d 1166, 1168 (11th Cir. 1985). As a result, this Court should defer to the Bankruptcy Court's interpretation of its own October 14, 2004 Order, absence a clear abuse of discretion. *Id*.

The Bankruptcy Court's October 14, 2004 Order provides, in pertinent part, as follows: "The Debtor's post-petition arrearage due [SPS] in the amount of $2,818.44, which represents the payments due for May, 2004, through and including the September 2004 payments, plus attorney's fees/costs and Court costs in the amount of $600.00, is to be included by the Debtor in the Debtor's plan." October 14, 2004 Order, p. 1, ¶ 1  In its Memorandum Decision, the Bankruptcy Court interpreted its October 14, 2004 Order, stating "**[t]here is nothing in this Court's October 14, 2004 Order which suggest that the $600.00 fee is the only charge that may be made to Saylor's account for all times**." Memorandum Decision, p. 4. (emphasis added)

Clearly, the Bankruptcy Court's interpretation of its own order and the related impact on the Debtor's Bankruptcy case does not rise to the level of an abuse of discretion. Indeed, since § 105 of the Bankruptcy Code plainly grants the Bankruptcy Court the authority to carry out the provisions of its prior orders, it is within the Bankruptcy Court's own discretion to determine the meaning and intent of its orders, and whether a violation of those orders has occurred. Thus, even construing all the allegations of the Debtor's complaint as true, no cause of action exists

*Saylor v. Select Portfolio Servicing, Inc.*

pursuant to § 105.

    2. <u>There is no remedy available to the Debtor under §§ 105 and 501 of the Bankruptcy Code.</u>

   In its Memorandum Decision, the Bankruptcy Court summarily dismissed any claims alleged by the Debtor under §§ 105 and 501 of the Bankruptcy Code.  Section 501, as raised by the Debtor in the Complaint, states a "creditor or an indenture trustee may file a proof of claim" and goes on to describe the effect of time as it relates to a proof of claim.  11 U.S.C. § 501.  Although the Complaint repeatedly points to § 501 in Count II, the quoted language from Count II of the Complaint is actually from § 502(a), stating that "a claim . . . proof of which is filed under section 501 . . . is deemed allowed unless a party in interest, . . . objects."  11 U.S.C. § 502(a); s*ee* Complaint, Count II, ¶ 28.  As illustrated by § 502 of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure, the proper mechanism for the Debtor to object to a claim filed by a creditor is not through an adversary proceeding, but through an objection to the proof of claim in the underlying bankruptcy. *Compare* Fed. R. Bankr. P. 7001, "Scope of Rules of Part VII" *with* Fed. R. Bankr. P. 3007 "Objections to Claims".  However, rather than choosing to use the claims resolution process through the Debtor's Bankruptcy case in accordance with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, the Debtor chose to file the instant AP.  Regardless of the misplaced vehicle chosen by the Debtor for its alleged claims under § 501, these claims must fail.  As stated by the Bankruptcy Court in its Memorandum Decision, the "claim" resolution process is not appropriate in the instant case because SPS has not filed a proof of claim in the Bankruptcy containing any of the fees listed in its response to the QWR and SPS has made no attempt to collect the fees listed in its response to the Debtor's QWR.

*Saylor v. Select Portfolio Servicing, Inc.*

       3.     <u>Pursuant to binding Eleventh Circuit law, the Debtor can not allege a claim under §§ 105 and 506 of the Bankruptcy Code.</u>

Just as the Debtor's futile attempt to invoke § 501 of the Bankruptcy Code to conjure up some cause of action fails, the Eleventh Circuit has likewise stated the Debtor's attempt to invoke § 506 must fail. Section 506 allows an oversecured creditor to receive "reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b). As the Bankruptcy Court found in its Memorandum Decision, *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333 (11th Cir. 2000) clearly bars any of the claims that the Debtor seeks to bring against SPS as they relate to § 506 and casts doubt upon the Debtor's standing to bring any action against SPS as currently framed in the Debtor's Complaint. In *Telfair*, the Eleventh Circuit examined whether a creditor/mortgagee violated § 506 or the automatic stay imposed by § 362 through the imposition of fees related to the debtor's regular loan payments that were made outside the debtor's Chapter 13 plan. The Eleventh Circuit allowed the post-petition fees, stating that "the attorney's fees that [the mortgagee] sought were not part of its secured claim; they arose apart from the plan and after confirmation." *Telfair*, 216 F.3d at 1339. The Debtor in the instant case does not allege that any of the fees/charges listed by SPS in response to the Debtor's QWR were incurred pre-petition. When the *Telfair* debtor/plaintiff suggested that "secured creditors in Chapter 13 cases are going to run amok" in assessing fees outside of a Chapter 13 plan, the Eleventh Circuit was "satisfied that the terms of the debt instruments agreed to by debtors and creditors provide adequate protection for Chapter 13 debtors." *Id.* As such, the Eleventh Circuit found § 506 inapplicable to the fees charged, just as the Bankruptcy Court found in its Memorandum Decision regarding the case at bar.

*Saylor v. Select Portfolio Servicing, Inc.*

## **CONCLUSION**

For the reasons stated above, the Bankruptcy Court's order dismissing the underlying AP should be affirmed and all respects.

Respectfully submitted,


/s/ John David Collins
Thomas W. Thagard
John David Collins
Brian R. Walding
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Amsouth/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000

Attorneys for Appellee Select Portfolio Servicing, Inc.

*Saylor v. Select Portfolio Servicing, Inc.*

**CERTIFICATE OF SERVICE**

     I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and by placing a copy of the same in the United States mail, postage prepared and properly addressed to the following:


David Gerald Poston
Brock & Stout
PO Drawer 311167
Enterprise, AL 36331-1167
david@circlecitylaw.com

Michael E. Bybee
2107 5th Avenue North, Suite 200
Birmingham, AL 35203-3325


On this the 16th day of April, 2007.


                                     /s/ John David Collins
                                     OF COUNSEL

*Saylor v. Select Portfolio Servicing, Inc.*

## **ADDENDUM**

**11 U.S.C. § 105. Power of the Court**

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

(b) Notwithstanding subsection (a) of this section, a court may not appoint a receiver in a case under this title.

(c) The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28. This subsection shall not be interpreted to exclude bankruptcy judges and other officers or employees appointed pursuant to chapter 6 of title 28 from its operation.

(d) The court, on its own motion or on the request of a party in interest, may--

(1) hold a status conference regarding any case or proceeding under this title after notice to the parties in interest;  and

(2) unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically, including an order that--

(A) sets the date by which the trustee must assume or reject an executory contract or unexpired lease;  or

(B) in a case under chapter 11 of this title--

(i) sets a date by which the debtor, or trustee if one has been appointed, shall file a disclosure statement and plan;

(ii) sets a date by which the debtor, or trustee if one has been appointed, shall solicit acceptances of a plan;

(iii) sets the date by which a party in interest other than a debtor may file a plan;

(iv) sets a date by which a proponent of a plan, other than the debtor, shall solicit acceptances of such plan;

(v) fixes the scope and format of the notice to be provided regarding the hearing on approval of the disclosure statement;  or

(vi) provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan.

**11 U.S.C. §  362. Automatic stay**

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

*Saylor v. Select Portfolio Servicing, Inc.*

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor;  and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay--

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

(2) under subsection (a) of this section--

(A) of the commencement or continuation of an action or proceeding for--

(i) the establishment of paternity;  or

(ii) the establishment or modification of an order for alimony, maintenance, or support;  or

(B) of the collection of alimony, maintenance, or support from property that is not property of the estate;

(3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title;

(4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;

[(5) Repealed.  Pub.L. 105-277, Div. I, Title VI, §  603(1), Oct. 21, 1998, 112 Stat. 2681-886]

(6) under subsection (a) of this section, of the setoff by a commodity broker, forward contract merchant, stockbroker, financial institutions, or securities clearing agency of any mutual debt and claim under or in connection with commodity contracts, as defined in section 761 of this title, forward contracts, or securities contracts, as defined in section 741 of this title, that constitutes the setoff of a claim against the debtor for a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, arising out of commodity contracts, forward contracts, or securities contracts against cash, securities, or other property held by or due from such commodity broker, forward contract merchant, stockbroker, financial institutions, or securities clearing agency to margin, guarantee, secure, or settle commodity contracts, forward contracts, or securities contracts;

*Saylor v. Select Portfolio Servicing, Inc.*

(7) under subsection (a) of this section, of the setoff by a repo participant, of any mutual debt and claim under or in connection with repurchase agreements that constitutes the setoff of a claim against the debtor for a margin payment, as defined in section 741 or 761 of this title, or settlement payment, as defined in section 741 of this title, arising out of repurchase agreements against cash, securities, or other property held by or due from such repo participant to margin, guarantee, secure or settle repurchase agreements;

(8) under subsection (a) of this section, of the commencement of any action by the Secretary of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by the Secretary is insured or was formerly insured under the National Housing Act and covers property, or combinations of property, consisting of five or more living units;

(9) under subsection (a), of--

(A) an audit by a governmental unit to determine tax liability;

(B) the issuance to the debtor by a governmental unit of a notice of tax deficiency;

(C) a demand for tax returns;  or

(D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

(10) under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property;

(11) under subsection (a) of this section, of the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument;

(12) under subsection (a) of this section, after the date which is 90 days after the filing of such petition, of the commencement or continuation, and conclusion to the entry of final judgment, of an action which involves a debtor subject to reorganization pursuant to chapter 11 of this title and which was brought by the Secretary of Transportation under section 31325 of title 46 (including distribution of any proceeds of sale) to foreclose a preferred ship or fleet mortgage, or a security interest in or relating to a vessel or vessel under construction, held by the Secretary of Transportation under section 207 or title XI of the Merchant Marine Act, 1936, or under applicable State law;

(13) under subsection (a) of this section, after the date which is 90 days after the filing of such petition, of the commencement or continuation, and conclusion to the entry of final judgment, of an action which involves a debtor subject to reorganization pursuant to chapter 11 of this title and which was brought by the Secretary of Commerce under section 31325 of title 46 (including distribution of any proceeds of sale) to foreclose a preferred ship or fleet mortgage in a vessel or a mortgage, deed of trust, or other security interest in a fishing facility held by the Secretary of Commerce under section 207 or title XI of the Merchant Marine Act, 1936;

(14) under subsection (a) of this section, of any action by an accrediting agency regarding the accreditation status of the debtor as an educational institution;

(15) under subsection (a) of this section, of any action by a State licensing body regarding the licensure of the debtor as an educational institution;

(16) under subsection (a) of this section, of any action by a guaranty agency, as defined in

*Saylor v. Select Portfolio Servicing, Inc.*

section 435(j) of the Higher Education Act of 1965 or the Secretary of Education regarding the eligibility of the debtor to participate in programs authorized under such Act;

(17) under subsection (a) of this section, of the setoff by a swap participant, of any mutual debt and claim under or in connection with any swap agreement that constitutes the setoff of a claim against the debtor for any payment due from the debtor under or in connection with any swap agreement against any payment due to the debtor from the swap participant under or in connection with any swap agreement or against cash, securities, or other property of the debtor held by or due from such swap participant to guarantee, secure or settle any swap agreement;  or

(18) under subsection (a) of the creation or perfection of a statutory lien for an ad valorem property tax imposed by the District of Columbia, or a political subdivision of a State, if such tax comes due after the filing of the petition.

The provisions of paragraphs (12) and (13) of this subsection shall apply with respect to any such petition filed on or before December 31, 1989.

(c) Except as provided in subsections (d), (e), and (f) of this section--

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;  and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of--

(A) the time the case is closed;

(B) the time the case is dismissed;  or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if--

(A) the debtor does not have an equity in such property;  and

(B) such property is not necessary to an effective reorganization;  or

(3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period)--

(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time;  or

(B) the debtor has commenced monthly payments to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien), which payments are in an amount equal to interest at a current fair market rate on the value of the creditor's interest in the real estate.

(e) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section.  A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section.  The court shall order such stay continued in effect pending the conclusion of the final

*Saylor v. Select Portfolio Servicing, Inc.*

hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing.  If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded not later than thirty days after the conclusion of such preliminary hearing, unless the 30-day period is extended with the consent of the parties in interest or for a specific time which the court finds is required by compelling circumstances.

(f) Upon request of a party in interest, the court, with or without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section.

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property;  and

(2) the party opposing such relief has the burden of proof on all other issues.

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.


## 11 U.S.C. §  501. Filing of proofs of claims or interests

(a) A creditor or an indenture trustee may file a proof of claim.  An equity security holder may file a proof of interest.

(b) If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.

(c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

(d) A claim of a kind specified in section 502(e)(2), 502(f), 502(g),  502(h) or 502(i) of this title may be filed under subsection (a), (b), or (c) of this section the same as if such claim were a claim against the debtor and had arisen before the date of the filing of the petition.


## 11 U.S.C. §  502. Allowance of claims or interests

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that-

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

(2) such claim is for unmatured interest;

(3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;

(4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

*Saylor v. Select Portfolio Servicing, Inc.*

(5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds--

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of--

(i) the date of the filing of the petition;  and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property;  plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds--

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of--

(i) the date of the filing of the petition;  or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract;  plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates;

(8) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor;  or

(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide.

(c) There shall be estimated for purpose of allowance under this section--

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case;  or

(2) any right to payment arising from a right to an equitable remedy for breach of performance.

(d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

(e)(1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that--

(A) such creditor's claim against the estate is disallowed;

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or

(C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

(2) A claim for reimbursement or contribution of such an entity that becomes fixed after the

*Saylor v. Select Portfolio Servicing, Inc.*

commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition.

(f) In an involuntary case, a claim arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee and the order for relief shall be determined as of the date such claim arises, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(g) A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(h) A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(i) A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(8) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(j) A claim that has been allowed or disallowed may be reconsidered for cause.  A reconsidered claim may be allowed or disallowed according to the equities of the case.  Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder.  This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

## 11 U.S.C. §  506. Determination of secured status

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

(c) The trustee may recover from property securing an allowed secured claim the reasonable,

*Saylor v. Select Portfolio Servicing, Inc.*

necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless--

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title;  or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

## 12 U.S.C. § 2601. Congressional findings and purpose

(a) The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.  The Congress also finds that it has been over two years since the Secretary of Housing and Urban Development and the Administrator of Veterans' Affairs submitted their joint report to the Congress on "Mortgage Settlement Costs" and that the time has come for the recommendations for Federal legislative action made in that report to be implemented.

(b) It is the purpose of this chapter to effect certain changes in the settlement process for residential real estate that will result--

(1) in more effective advance disclosure to home buyers and sellers of settlement costs;

(2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;

(3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and

(4) in significant reform and modernization of local recordkeeping of land title information

## 12 U.S.C. § 2605. Servicing of mortgage loans and administration of escrow accounts

(a) Disclosure to applicant relating to assignment, sale, or transfer of loan servicing

Each person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding.

(b) Notice by transferor of loan servicing at time of transfer

(1) Notice requirement

Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person.

(2) Time of notice

(A) In general

Except as provided under subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not less than 15 days before the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

(B) Exception for certain proceedings

The notice required under paragraph (1) shall be made to the borrower not more than 30 days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan (with respect to which such notice is made) in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

*Saylor v. Select Portfolio Servicing, Inc.*

(i) termination of the contract for servicing the loan for cause;

(ii) commencement of proceedings for bankruptcy of the servicer;  or

(iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

(C) Exception for notice provided at closing

The provisions of subparagraphs (A) and (B) shall not apply to any assignment, sale, or transfer of the servicing of any mortgage loan if the person who makes the loan provides to the borrower, at settlement (with respect to the property for which the mortgage loan is made), written notice under paragraph (3) of such transfer.

(3) Contents of notice

The notice required under paragraph (1) shall include the following information:

(A) The effective date of transfer of the servicing described in such paragraph.

(B) The name, address, and toll-free or collect call telephone number of the transferee servicer.

(C) A toll-free or collect call telephone number for (i) an individual employed by the transferor servicer, or (ii) the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

(D) The name and toll-free or collect call telephone number for (i) an individual employed by the transferee servicer, or (ii) the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

(E) The date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments.

(F) Any information concerning the effect the transfer may have, if any, on the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance and what action, if any, the borrower must take to maintain coverage.

(G) A statement that the assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the security instruments other than terms directly related to the servicing of such loan.

(c) Notice by transferee of loan servicing at time of transfer

(1) Notice requirement

Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer.

(2) Time of notice

(A) In general

Except as provided in subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not more than 15 days after the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

(B) Exception for certain proceedings

The notice required under paragraph (1) shall be made to the borrower not more than 30 days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan (with respect to which such notice is made) in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

(i) termination of the contract for servicing the loan for cause;

(ii) commencement of proceedings for bankruptcy of the servicer;  or

(iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the

*Saylor v. Select Portfolio Servicing, Inc.*

Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

(C) Exception for notice provided at closing

The provisions of subparagraphs (A) and (B) shall not apply to any assignment, sale, or transfer of the servicing of any mortgage loan if the person who makes the loan provides to the borrower, at settlement (with respect to the property for which the mortgage loan is made), written notice under paragraph (3) of such transfer.

(3) Contents of notice

Any notice required under paragraph (1) shall include the information described in subsection (b)(3) of this section.

(d) Treatment of loan payments during transfer period

During the 60-day period beginning on the effective date of transfer of the servicing of any federally related mortgage loan, a late fee may not be imposed on the borrower with respect to any payment on such loan and no such payment may be treated as late for any other purposes, if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment.

(e) Duty of loan servicer to respond to borrower inquiries

(1) Notice of receipt of inquiry

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of,

*Saylor v. Select Portfolio Servicing, Inc.*

the servicer who can provide assistance to the borrower;  or
(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.
(3) Protection of credit rating
During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15).
(f) Damages and costs
Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
(1) Individuals
In the case of any action by an individual, an amount equal to the sum of--
(A) any actual damages to the borrower as a result of the failure;  and
(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.
(2) Class actions
In the case of a class action, an amount equal to the sum of--
(A) any actual damages to each of the borrowers in the class as a result of the failure;  and
(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not greater than $1,000 for each member of the class, except that the total amount of damages under this subparagraph in any class action may not exceed the lesser of--
(i) $500,000;  of
(ii) 1 percent of the net worth of the servicer.
(3) Costs
In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.
(4) Nonliability
A transferor or transferee servicer shall not be liable under this subsection for any failure to comply with any requirement under this section if, within 60 days after discovering an error (whether pursuant to a final written examination report or the servicer's own procedures) and before the commencement of an action under this subsection and the receipt of written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid.
(g) Administration of escrow accounts
If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall

*Saylor v. Select Portfolio Servicing, Inc.*

make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

(h) Preemption of conflicting State laws

Notwithstanding any provision of any law or regulation of any State, a person who makes a federally related mortgage loan or a servicer shall be considered to have complied with the provisions of any such State law or regulation requiring notice to a borrower at the time of application for a loan or transfer of the servicing of a loan if such person or servicer complies with the requirements under this section regarding timing, content, and procedures for notification of the borrower.

(i) Definitions

For purposes of this section:

(1) Effective date of transfer

The term "effective date of transfer" means the date on which the mortgage payment of a borrower is first due to the transferee servicer of a mortgage loan pursuant to the assignment, sale, or transfer of the servicing of the mortgage loan

(2) Service

The term "servicer" means the person responsible for servicing of a loan  (including the person who makes or holds a loan if such person also services the loan).  The term does not include--

(A) the Federal Deposit Insurance Corporation or the Resolution Trust Corporation, in connection with assets acquired, assigned, sold, or transferred pursuant to section 1823(c) of this title or as receiver or conservator of an insured depository institution;  and

(B) the Government National Mortgage Association, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Resolution Trust Corporation, or the Federal Deposit Insurance Corporation, in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

(i) termination of the contract for servicing the loan for cause;

(ii) commencement of proceedings for bankruptcy of the servicer;  or

(iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

(3) Servicing

The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

(j) Transition

(1) Originator liability

A person who makes a federally related mortgage loan shall not be liable to a borrower because of a failure of such person to comply with subsection (a) of this section with respect to an application for a loan made by the borrower before the regulations referred to in paragraph (3) take effect.

(2) Servicer liability

A servicer of a federally related mortgage loan shall not be liable to a borrower because of a failure of the servicer to perform any duty under subsection (b), (c), (d), or (e) of this section that arises before the regulations referred to in paragraph (3) take effect.

*Saylor v. Select Portfolio Servicing, Inc.*

(3) Regulations and effective date
The Secretary shall, by regulations that shall take effect not later than April 20, 1991, establish any requirements necessary to carry out this section.  Such regulations shall include the model disclosure statement required under subsection (a)(2) of this section.

### Fed. R. Bankr. 3007. Objections to Claims
An objection to the allowance of a claim shall be in writing and filed.  A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing.  If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.

### Fed. R. Bankr. P.  7001. Scope of Rules of Part VII
An adversary proceeding is governed by the rules of this Part VII.  The following are adversary proceedings:
(1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under §  554(b) or §  725 of the Code, Rule 2017, or Rule 6002;
(2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d);
(3) a proceeding to obtain approval under §  363(h) for the sale of both the interest of the estate and of a co-owner in property;
(4) a proceeding to object to or revoke a discharge;
(5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan;
(6) a proceeding to determine the dischargeability of a debt;
(7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;
(8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;
(9) a proceeding to obtain a declaratory judgment relating to any of the foregoing; or
(10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. §  1452.

### Fed. R. Bankr. P.  8010. Form of Briefs;  Length
(a) Form of briefs
Unless the district court or the bankruptcy appellate panel by local rule otherwise provides, the form of brief shall be as follows:
(1) Brief of the appellant.  The brief of the appellant shall contain under appropriate headings and in the order here indicated:
(A) A table of contents, with page references, and a table of cases alphabetically arranged, statutes and other authorities cited, with references to the pages of the brief where they are cited.
(B) A statement of the basis of appellate jurisdiction.
(C) A statement of the issues presented and the applicable standard of appellate review.
(D) A statement of the case.  The statement shall first indicate briefly the nature of the case, the course of the proceedings, and the disposition in the court below.  There shall follow a statement of the facts relevant to the issues presented for review, with appropriate references to the record.

*Saylor v. Select Portfolio Servicing, Inc.*

(E) An argument.  The argument may be preceded by a summary.  The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.

(F) A short conclusion stating the precise relief sought.

(2) Brief of the appellee.  The brief of the appellee shall conform to the requirements of paragraph (1)(A)-(E) of this subdivision, except that a statement of the basis of appellate jurisdiction, of the issues, or of the case need not be made unless the appellee is dissatisfied with the statement of the appellant.

(b) Reproduction of statutes, rules, regulations, or similar material

If determination of the issues presented requires reference to the Code or other statutes, rules, regulations, or similar material, relevant parts thereof shall be reproduced in the brief or in an addendum or they may be supplied to the court in pamphlet form.

(c) Length of briefs

Unless the district court or the bankruptcy appellate panel by local rule or order otherwise provides, principal briefs shall not exceed 50 pages, and reply briefs shall not exceed 25 pages, exclusive of pages containing the table of contents, tables of citations and any addendum containing statutes, rules, regulations, or similar material.