IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JIMMY D. SAYLOR, & | ) | |
| TAMMY M. SAYLOR, | ) | Bankruptcy Case No. 02-80576 |
| | ) | |
| Debtors, | ) | |
| _____ | ) | |
| | ) | |
| JIMMY D. SAYLOR, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:07-cv-229-WKW |
| | ) | [wo] |
| SELECT PORTFOLIO SERVICING, INC., | ) | |
| | ) | |
| Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

This adversary proceeding is before the court on an appeal from the United States Bankruptcy Court of the Middle District of Alabama after the bankruptcy court granted a motion to dismiss. For the reasons given below, the bankruptcy court's order is due to be AFFIRMED.

**I.  FACTS AND PROCEDURAL HISTORY**

The facts as alleged in the complaint are as follows. On April 29, 2002, Jimmy D. Saylor ("Saylor") filed a chapter 13 bankruptcy case. Select Portfolio Servicing, Inc. ("SPS"), the servicer of Saylor's mortgage loan, filed a proof of claim for $3,225.22,

representing the total pre-petition arrearage Saylor owed. On July 3, 2002, Saylor filed an amended chapter 13 plan which included the pre-petition mortgage arrearage. On September 20, 2002, the bankruptcy court confirmed Saylor's plan.

Between May 2004 and September 2004, Saylor defaulted on his post-petition mortgage obligation to SPS. Because of the default, SPS filed a motion for relief from the automatic stay. Saylor and SPS agreed that Saylor would amend his plan to reflect the post-petition arrearage. On October 14, 2004, the bankruptcy court entered an order ratifying the agreement, which allowed Saylor to amend his plan to include the post-petition arrearage of $2,818.44 and attorney fees of $600.00. On November 1, 2004, SPS filed its proof of claim.

On May 18, 2006, Saylor submitted to SPS a Qualified Written Request ("QWR") in accordance with the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605, so that Saylor could review charges SPS made to his mortgage. On May 24, 2006, SPS forwarded Saylor's counsel a transaction history report and loan payoff statement indicating the following charges had been assessed to Saylor's mortgage:

| Date | Description | Fee |
|---|---|---|
| June 7, 2002 | Inspection Fee | $11.35 |
| July 12, 2002 | Inspection Fee | 11.35 |
| September 23, 2002 | Undisclosed bankruptcy legal cost | 456.00 |
| January 21, 2004 | Broker Price opinion | 85.00 |
| September 10, 2004 | Undisclosed bankruptcy attorney fee | 550.00 |
| November 2, 2004 | Broker Price opinion | 85.00 |
| May 5, 2005 | Broker Price opinion | 85.00 |

| November 14, 2005 | Broker Price opinion | 85.00 |
|---|---|---:|
| May 18, 2006 | Unknown corporate advance | 722.35 |
| **Total** | | $2091.05 |

Two of the charges are dated prior to the confirmation of Saylor's bankruptcy plan.

On July 10, 2006, based on the information received from SPS, Saylor commenced an adversary proceeding against SPS. On August 10, 2006, SPS filed a motion to dismiss pursuant to Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure, which was granted. Saylor appeals.

## II. JURISDICTION AND VENUE

This court has appellate jurisdiction to hear the bankruptcy appeal. *See* 28 U.S.C. § 158(a) (granting district courts jurisdiction to hear appeals "from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."). Venue is proper because an appeal "shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." *Id.*

## III. STANDARD OF REVIEW

A district court reviews the decisions of a bankruptcy court independently. *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1322 (11th Cir. 1995). The court reviews a ruling on a motion to dismiss for failure to state a claim *de novo*. *Hoffend v. Villa (In re Villa)*, 261 F.3d 1148, 1150 (11th Cir. 2001). In the Eleventh Circuit, the courts use

the abuse of discretion standard when reviewing a bankruptcy court's interpretation of its own order. *Finova Capital Corp. v. Larson Pharm. Inc. (In re Optical Techs., Inc.*), 425 F.3d 1294, 1300 (11th Cir. 2005).

## IV.  DISCUSSION

In reviewing the bankruptcy court's order dismissing the case, the court must analyze whether the bankruptcy court properly dismissed Saylor's adversary proceeding claims alleging that SPS violated the automatic stay and that SPS should be held in contempt for violating orders of the bankruptcy court.  The bankruptcy court held that it lacked subject matter jurisdiction and, in the alternative, that Saylor failed to state a claim for relief. Because a court must first resolve whether it has subject matter jurisdiction, the court begins with this issue. *See Mays v. Chase Manhattan Mortgage Corp.*, 180 Fed. Appx. 143, 143 (11th Cir. 2006).

*A.      Subject Matter Jurisdiction*

Saylor contends the bankruptcy court has subject matter jurisdiction because he alleged a violation of the automatic stay, while SPS responds there is no jurisdiction because Saylor's claims do not involve property of the bankruptcy estate.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The party asserting jurisdiction bears the burden of proving it exists. *See Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).  When a party properly raises a factual question regarding the court's jurisdiction, the court is not bound to accept

as true the jurisdictional allegations in the complaint. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

District courts have jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Congress, in turn, has authorized district courts to refer to bankruptcy judges "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." *Id.* § 157. The Middle District of Alabama has entered such an order referring these matters to the Bankruptcy Court for the Middle District of Alabama. *See* General Order of Reference of Bankruptcy Matters (M.D. Ala. Apr. 25, 1985).

Bankruptcy courts have subject matter jurisdiction over three categories of claims: a matter arising under title 11, a matter arising in a case under title 11, and a matter related to a case under title 11. *See In re Toledo*, 170 F.3d 1340, 1344 (11th Cir. 1999). A proceeding arises under title 11 if it "invok[es] a substantive right created by the Bankruptcy Code." *Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th Cir. 2000) (internal quotation marks and citation omitted). A proceeding arises in a case under title 11 if it "involve[s] administrative-type matters [or] . . . matters that could arise only in bankruptcy." *Id.* (internal quotation marks and citations omitted). A proceeding is related to bankruptcy if "the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Id.* (internal quotation marks and citation omitted).

Saylor asserts that there is subject matter jurisdiction because he claims a violation of

the automatic stay, which is a core proceeding arising in bankruptcy.[1]  Section 362(k) creates a cause action for such a violation: "[A]n individual injured by any willful violation of a stay proved by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k).  Because the bankruptcy code creates a cause of action for a violation of the automatic stay and Saylor brings his claim pursuant to this provision, the court finds that the claim arises under title 11. *See also Halas v. Platek*, 239 B.R. 784, 792-93 (N.D. Ill. 1999) (finding a claim for a violation of the automatic stay arises under title 11).

SPS argues that there is no jurisdiction because Saylor's claims do not have an effect on the property of the bankruptcy estate.  This argument focuses on whether there is jurisdiction over a proceeding related to a case under title 11 and ignores that one of the other tests for jurisdiction is met, *i.e.*, the claim arises in a case under title 11.  While some courts have collapsed the three tests for jurisdiction into one test, *see Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987), this court refuses to do so given that Congress has created three independent bases for bankruptcy jurisdiction.  *See Bank United v. Manley*, 273 B.R.

---

[1] The classification of this case as a core or non-core proceeding is separate from whether the court has subject matter jurisdiction.  The Eleventh Circuit has clearly explained that first a court determines if it has jurisdiction and then it determines whether the claim is a core or a non-core proceeding.  *See Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 787 (11th Cir. 1990) ("[F]irst, the reviewing court must decide whether federal jurisdiction exists in the district court; second, if jurisdiction does exist, it must determine whether the bankruptcy court properly exercised its constitutionally available powers in proceeding over the matter as a "core" or "non-core" proceeding.").  Whether a matter is core or non-core is not relevant to jurisdiction but instead related to how a district court reviews the bankruptcy court's decision.  However, the separation is artificial because the classification of a matter as core or non-core directly depends on the basis for jurisdiction.  As a result, there is a tendency to conflate the two issues.  *See also Toledo*, 170 F.3d at 1345 n.6.

229, 242-43 (N.D. Ala. 2000) (holding that collapsing the three jurisdictional bases into one test "blurs the statutory distinction present among them."). Moreover, the Eleventh Circuit has applied the three separate jurisdictional tests, confirming jurisdiction if any one of them is met. *See Welt v. MJO Holding Corp. (In re Happy Hocker Pawn Shop), Inc.*, 212 Fed. Appx. 811, 816-17 (11th Cir. 2006); *Toledo*, 170 F.3d at 1345. Because Saylor has brought a claim based on a substantive right contained in title 11, the court finds that it has subject matter jurisdiction over his claims.

### B.     *Failure to State a Claim*

Having found that there is jurisdiction over Saylor's claims, the court now examines whether the bankruptcy court's alternate holding that Saylor failed to state a claim for a violation of the automatic stay and contempt is due to be affirmed. Each claim is reviewed separately.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007). Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1964-65.

### 1. **<u>Violation of the Automatic Stay</u>**

Under the bankruptcy code, the filing of a bankruptcy petition operates as an automatic stay against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Individuals injured by a willful violation of the automatic stay are entitled to actual damages, attorney fees and costs, and, potentially, punitive damages. *Id.* § 362(k).

For there to be a violation of the automatic stay, SPS must have undertaken an act under § 362(a)(3). SPS argues there has been no act because the charges made to Saylor's account were merely bookkeeping entries and it has not attempted to collect them from Saylor. Indeed, SPS only disclosed the charges to Saylor after receiving a QWR from Saylor, which created a legal obligation for SPS to respond under RESPA. Saylor responds these steps constitute an act. While the Eleventh Circuit has not addressed this exact issue, other courts have addressed closely analogous situations.

Merely recording an amount owed as a bookkeeping entry does not constitute an act that violates the automatic stay. *See Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1, 3-4 (1st Cir. 2003). In *Mann*, debtors filed a class action in district court claiming that their mortgage company violated the automatic stay by internally recording charges for attorney fees and inspection fees related to bankruptcy incurred post-petition but pre-confirmation. *Id.* at 3. The First Circuit colorfully described the purpose of the automatic stay as: "[To] forfend against the disorderly, piecemeal dismemberment of the debtor's estate

8

outside the bankruptcy proceedings." *Id.* Viewed in this light, the court found that unilaterally recording amounts due but not communicating them to the debtor, other creditors, the bankruptcy court, or any third party, was not an act in violation of the automatic stay. *Id.* The bookkeeping entries were "mere unilateral notations" until the mortgage company took action "(i) by instituting collection proceedings which the [debtors] or the chapter 13 estate would be forced to defend against, or (ii) by transmitting 'harassing' communications to the [debtors]." *Id.* at 4.

However, sending a payoff letter may constitute an act for § 362(a)(3) purposes when the mortgage company takes other steps to collect the debt. *See In re Sullivan*, 367 B.R. 54, 62 (Bankr. N.D.N.Y. 2007). In *Sullivan*, a debtor received a payoff letter from his mortgage company, which included a charge for attorney fees related to the debtor's bankruptcy, while the debtor was attempting to sell his home. The mortgage company refused to provide the debtor with an abstract of title, which was necessary for the debtor to consummate the sale, until he paid the disputed charges. *Id.* at 58. The court concluded that the mortgage company had acted because it took action to collect.

Another court held that merely sending a debtor a payoff letter does not violate the automatic stay. *See In re Redmond*, 380 B.R. 179, 187 (Bankr. N.D. Ill. 2007). In *Redmond*, the debtor requested a payoff letter from his bank and then contended that the bank violated the automatic stay by sending the payoff letters. *Id.* at 183. The court found that the letters did not violate the automatic stay because they were "simply statements of the bank's

9

position as to what was owed." *Id.* at 186.  The court held that sending a payoff letter in response to an inquiry from the debtor was not an act because it was not an attempt to collect payment and that the argument that sending a payoff letter violated the automatic stay is "a position completely without support in either precedent or bankruptcy policy." *Id.* at 186-87.

In the instant case, the court finds that SPS has not "acted" for § 362(a)(3) purposes by sending the transaction history report and payoff letter in response to Saylor's request and has not taken any affirmative steps to collect the debt from Saylor.[2]  The court refuses to find that merely sending a transaction history report and payoff letter in response to a request from the debtor violates the automatic stay when there is no allegation that the mortgage company has attempted to collect the debt.

Saylor also argues that SPS acted when it made the charges against Saylor's mortgage account.  However, this argument is even less compelling because not only has Saylor failed to allege that SPS attempted to collect the debt but, at that point, the charges had not been communicated to Saylor.  Because Saylor failed to allege facts sufficient to constitute an act, the bankruptcy court was correct in concluding that these claims were due to be dismissed.

**B.     Contempt Claims**

In counts two through four, Saylor invokes the court's inherent and statutory contempt powers to enforce the provisions of the bankruptcy code and its orders, and claims that the

---

[2] Saylor disputes that the charges were bookkeeping entries and seeks the opportunity to conduct discovery on this issue.  However, based on the allegations in the complaint, Saylor has failed to state a claim and thus is not entitled to discovery.

charges made by SPS violate the bankruptcy court's orders. The Eleventh Circuit has adopted an abuse of discretion standard in reviewing bankruptcy court's enforcement of its orders because "the bankruptcy judge who has presided over a case from its inception is in the best position to clarify any apparent inconsistencies in the court's rulings." *Finova Capital*, 425 F.3d at 1300 (internal quotation marks and citation omitted).

The court finds that the bankruptcy court did not err in exercising its equitable powers and in concluding that SPS's recording of charges against Saylor's mortgage did not violate its orders. The court emphasizes that it reviews decisions of the bankruptcy court interpreting its own orders under the abuse of discretion standard and finds that the decision does not offend this standard of review.

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED and ADJUDGED that the decision of the bankruptcy court is AFFIRMED.

DONE this 9th day of June, 2008.

                                         /s/  W.  Keith Watkins
                                         UNITED STATES DISTRICT JUDGE